Good morning, my name is Clay Hernandez. I represent the appellant Ruben Ultreras, and I'd like to reserve five minutes for rebuttal if it pleases the court. It's the appellant's position in this case that the government and their actions have so manipulated the trial, and quite frankly the trial court in this case, that our client's due process rights and rights to a fair trial were compromised. I'd like to preface my argument with the fact that I understand that the government is entitled by case law to do each of the things that we complain about individually. They're entitled to do things like make a plea agreement, a joint plea agreement, to try cases together, to put on the evidence that they wish to put on. They're entitled to make a plea agreement prior to sentencing. But when you do that in the form in which they proceeded in this case, it is our position, as I said, that our client's right to due process and a fair trial were compromised. I'd ask the court to consider this. If at our motion to sever, originally in front of the trial judge, the government had stood up and said, you know, Judge, when you're deciding this, I just want you to know, this is what we're going to do. We're going to go ahead and try this case together. We're going to put on all this evidence about the firearms and the automatic weapons, and there will be the disparity in the evidence against one defendant versus the other. We are going to get convictions against both defendants, including the co-defendant, with all the gun counts, or we could sentence him to an extra 30 years in prison. And then at his sentencing, now that we have all this information before the jury for both defendants, we're going to dismiss all those counts and simply and effectively sentence him on the conspiracy count. It is our position that the trial judge would have looked at that initial motion to sever much differently. I'd also point out that it is our position that the government has not addressed these issues in their briefs to date. Could Judge Rohl have refused the dismissal? You know, I think a judge at any time could reject a plea agreement, and I know that Judge Rohl, as well as most of the judges in Tucson, do that on occasion. He could have, but he did not. But I believe he could have. He could have rejected it if he, for some reason, had desired to. I can't speak to why he did or did not. Were there witnesses called in the joint trial which would have been irrelevant in a single trial against your client? It is our position. Can we start with a yes or no? Yes. Yes, I believe there were. Which witnesses were called in the joint trial that would not have been relevant to an individual trial of your client? I believe all of the witnesses that dealt with Ira Friedman, and I apologize because there were so many witnesses. I have some of the names. I forget some of the names, but all of the witnesses dealing with the Ira Friedman episode, where they were out in, I believe, La Jolla, California, and the codefendant was there. There was money to be purchased or obtained, and there were, I believe, at least one, if not two, automatic weapons that were seized in California by the federal agents that were investigating this case. I believe all of those witnesses would have, it's our position, would have been excluded or not relevant in trial, because there was, at that point, it would be our position that they were expanding the conspiracy way too much to allow for the introduction of that. It wouldn't have been relevant to simply my client's trial. The judge did give a spillover instruction to the jury? He did. Yes, he did. And did you object to that? No, we did not. Judge, wait. And I understand the Court's position with regard to the spillover. It's not a position. I'm asking a question. I understand the Court's question. It is our position that a, that the spillover, that the spillover instruction was not sufficient to remedy the situation in this case. And I realize what the case law says, that it's presumed to be that. But if the Court looks at, if the Court looks at the enormity of the evidence against the codefendant with regard to the, with regard to the cocaine, with regard to the automatic weapons at various locations, and if the Court simply looks at, and I realize we're talking about separate issues, but if the Court looks at the pre-sentence report and the findings of Judge Roll that we take exception to, that I'll address shortly, in sentencing, when he says, there's no way you couldn't have known, it's inconceivable that you didn't know these sort of things were going on. It is our position that it is the same rationale that the judge used in making those kind of findings, that the jury is at risk of, and this is a jurist with many years of experience. I've appeared in front of Judge Roll since, since the early 90s when he took the Federal bench. He has many years of experience, and he makes those findings, and it's our position that there wasn't evidence to support that Mr. Ultreris, my client, had any knowledge or connection to any of those firearms. Wait a second. I'm sorry. Maybe I'm, correct me if I'm wrong, but ironically, although the guns were involved, they involved someone who had a lesser role in the conspiracy than your client. Am I wrong? As I understand the nature of the conspiracy, your guy was much higher in levels. So what makes the judge's finding here so off the wall? I mean, I could see the argument if it was the reverse, that he's a minor character. How does he know the full scope? But your guy was a lot higher, even though he may not have known about this particular incident. That was the statement of the judge. What's wrong with it? What's wrong with it is our position is the evidence that came in during the course of the trial. The evidence of my client's connection to this conspiracy was four or five cooperating defendants, a couple of whom had actually, or actually one was a brother-in-law and a couple of whom were actually. But if you, all right, it's four or five, but if you accept it, his role was a lot more significant in this conspiracy than the co-defendant. Right? That is their allegation. The conviction is the same. However, as I point out in our brief, Mr. Ultreris was never in this country during the course of this conspiracy. There is no communication between any of the witnesses except the brother-in-law, who delivers a piece of paper, between Mr. Ultreris and any of the people in this case, including the co-defendant who had these guns at all these various places. I don't know if I'm answering the Court's question. It's our position that there was no evidence to the allegation of the government and the statements of the judge were that there was, that there's no way he could not have known because, as the Court correctly says, he was much higher. What was the potential sentence if your client had accepted the plea bargain? The plea agreement, I believe, was 15 to 25. Months? No, I'm sorry. Years? 15 to 25 years. Yes, sir. It was, we did a pre-sentence, a potential pre-sentence investigation where the Probation Department recommended upwards of at least 20 years. And that, so it was our belief that he would have received at least 20 years if he had taken it. And what did he get? 25 years. This is a post-book, it was a pre-booker sentence? No. So what made you think, well, you probably know the judges better than I do. And I, it's always been my position with that particular trial judge that any time there are weapons involved that you are going to have a much tougher sentence than not. Okay, I understand. So as far as the, returning to what I was speaking about with regard to the government proceeding and the way in which they did, it's our position that they took full advantage of the trial with regard to the co-defendant in prejudicing Mr. Ultruris. They argued, when we argued about this, that there was, it was for trial efficiency, that they were cookie-cutter witnesses, that they would be the same witnesses in both cases. As the court correctly questioned, we believe that that would not have been necessarily the case, that certain witnesses would not have been there. The other thing is I think that both the defense and, more importantly, the evidence that came from those witnesses would have been different. I believe that the rule of relevance may have severely limited, or I think it would have severely limited what a lot of the testimony that came out during the course of the trial, how it would have been able to come out or if it would have been able to come out at all, giving you the example earlier of the guns out in California. Judge, I'm sorry, I can't tell the court why the plea was struck at the last minute. We had all the evidence that came in about the guns and the danger and the extra time that would have been, would have gone forward, except that they waived their right to appeal. And it's our position that the cookie-cutter and government efficiency or trial efficiency would apply to that as well. I can't say that the waiving of the, I'm sorry, the giving them of the plea that they did at that time in any way comports with their prior concerns with regard to. Right. But, I mean, at the end of the day, I mean, basically, if I understand what you're saying, individually there's probably not any due process violation, any of this stuff. You're arguing sort of cumulatively. But aren't you asking us to make a little bit of a leap on a new due process violation? In other words, what you're essentially saying is that prosecution manipulated the process and produced an end result by its actions within its discretion. But I don't know if we have a case that goes that far to say doing something that's perfectly legal and perfectly within the prosecution's discretion cumulatively adds up to a due process violation. Am I misunderstanding your argument? You're not, except that I think if you wrap it in the theory of severance, I think if you wrap it in the issue with regard to our concerns with regard to severance, and if severance had taken place, it would have solved all these issues. None of these other things would have been of any concern to us, specifically them bringing in evidence against the co-defendant and then ultimately changing their plea at the sentencing, because it would have had no effect on the trial of my client. We would have been tried differently. So ordinarily I would agree with the Court as far as the district court can't possibly know that. You may quarrel with the district court's notion. But, I mean, the prosecution's entitled to make a plea agreement. The court didn't know that. That's correct. And that was my position with regard to if they had said all those things at the beginning, if all of this stuff had been clear from the very beginning, and I realize that the judge isn't clairvoyant and he can't tell what's going to happen in the future, but my concern is what happens if he or not what happens, what happened in their actions and the cumulative nature of that within the severance, within the denial of severance is what, in our opinion, justifies the new trial or at minimum, actually the new trial. Thank you. I'm sorry. Well, in a way I understand, because if this happens and it's unfortunate, but if the other co-defendant had pled out in the real world, probably the judge would have shortened the case and said, you know, what do you need all this? And the guns probably, you know, in his mind would have been separated. But how do you spell out that the government manipulated or some sort of due process? I mean, this happens. It's unfortunate, but that's, you know, if the co-defendant had pled, you would have been in much better shape, there's no doubt about it. But I don't see how you can argue manipulation. How does the government know that the other guy wouldn't take the plea at the last minute, too? Well, our argument would be that what they did was by tying the two pleas together, they made sure that they maintained their cash cow, if you will, the person who can bring in all the nice evidence in a case, that they maintained him in the trial. And then he stayed. You mean they deliberately gave the co-defendant a worse deal in order to hold your guy in? No, Judge. Is that the argument? No. They joined the plea. They said that, and it happens all the time, I'm not denying that, but they said if you're going to plead, both of you have to plea. Yeah, well, that's, you know, until that's held improper, but it's happening every day in every district court in this country, you know, a universal plea or, you know. Which my point with regard to if you take all of these things and had known them at the beginning, and I realize Judge DeWalt couldn't know that at the beginning, but if he had known all these things at the beginning, the way this would play out, the motion for severance would have, as we believe it should have, been granted. Okay. We have a little bit of time left for rebuttal. Thank you, counsel. Ms. Corlett. So that our records are straight, you're an assistant United States attorney? Yes, Your Honor. Okay. You're not from the Department of Justice? No, Your Honor. Okay. And good morning. As you said, I am Celeste Corlett here on behalf of the United States. Your Honors, first, the government maintains the defendant did waive his severance motion, even so the district court did not abuse its discretion in denying the severance. As Your Honor pointed out, the evidence the defendant complains about, that the co-defendant had a gun and was guarding the cocaine with a gun, that type of evidence would have come out regardless of whether or not that co-defendant was tried with this defendant. That's because there are at least six up to nine other individuals who are using guns and guarding their cocaine during this conspiracy. The PSR on page 16 says that nine of them. That's not the real world. Pardon me? I wouldn't have let it in. I would have said you can bring it up on sentencing. But it's okay. It doesn't mean it was error. But, you know, in the real world, if it was one defendant and I had these five witnesses, I would have said that's enough. But the reason that the guns did come in is because it was necessary to this conspiracy. It was because this was an enormous quantity of cocaine, 17,000 pounds of cocaine that was coming in. And it was necessary to show the conspiracy for which the defendant was convicted by the jury to show that these guns were necessary to guard this enormous amount. That's not an element of the crime, is it? Pardon me? Using guns in connection with a large amount of drugs. No, it was not. But what it did show was. So it wasn't strictly necessary to prove. It bolstered your case. It certainly prejudiced the defendant. And I'm not saying it was error to come in. But it wasn't strictly relevant. I think there's probably a lot of facts around drug conspiracy that are prejudicial to defendants. And that's part of the crime itself is that they are dangerous crimes in using these guns. When did the government decide that unless some charges were dismissed against Valle Hurtado, that his sentencing exposure would be larger than anyone involved in the conspiracy? When did the government decide that his sentencing exposure would be larger? What motivated the government to take the sentencing action it did with respect to Mr. Hurtado? And when did they realize the exposure he was facing? It was after trial that both defendants were offered plea agreements again. Both this defendant and the co-defendant were both offered plea agreements. And it was strictly on the basis of saving government resources because they were going to waive their appeal. The co-defendant agreed to do that. And he did waive his appeal. Obviously, the defendant did not. And we have this appeal today. What was the offer to Otreas? To the defendant today? Yes. I believe that his offer was 25 to 40 after the trial. And the co-defendant, as is in the record, was that the ER that defense counsel provided was 20 to 40. So both of them, after trial, were offered plea agreements, just the same, and that they were to waive their right to appeal. Both of them in the end. After verdict? Correct. And both of them in the end got the exact same sentence, 25 years, even though, as Your Honor has pointed out, this defendant was much higher in the organization, much more responsible. He was over another person, David Alvarez, who was over the co-defendant, Mr. Hurtado, the person who guarded the guns. So even though he was much lower in the organization, they received the exact same sentence. They both received plea offers after the trial. Both received plea offers before the trial. The defendant refused it. Both received plea offers after the trial. This defendant refused it. The co-defendant took the plea. He waived his right to appeal. The plea offer before trial required that they both plead? Correct. It was a joint plea offer. Was that true of the post-trial offer? Actually, I don't believe so. I don't actually have that plea agreement in front of me, so I can't say for certain. So I guess to follow up, what government resources are really saved if you don't make it a contingent offer? You're here arguing. You briefed it anyway. It's not that much different from briefing two. There are 50 co-defendants in this case. If each one of them had appealed their case, that would be quite a bit of government resources. So each time the government can reduce that resource, even though it's the same evidence, it's the same conspiracy for each of them, 50 appearances before this court would be quite a bit of resources. And so each time that the trial at USA could have the defendants waive their right to appeal, he made the offer to them. Some accepted and some did not. And, Your Honors, as to the sentencing issue, the district court clearly did not err in finding that the defendant could reasonably foresee that his co-defendants would be using guns to protect this enormous amount of cocaine. This court in Garcia, the case referenced in our answering brief, this court stated that in light of the amount of drugs, it was reasonably foreseeable that the co-defendant would use guns. In Garcia, there was 17 kilos of cocaine. Here there was 17,000 pounds of cocaine. So in the same way that a district court there found that the defendant could reasonably foresee that there was going to be guns used in that conspiracy, here the same thing. And the district court was also correct in finding that it was a standard operating procedure of the organization to have guns with the cocaine, and that was reasonably foreseeable by this defendant. Your Honors, unless you have any other questions. I don't see anything. Thank you, counsel, for coming in today. Thank you. Rebuttal. We'll give you a minute on rebuttal. I'd point out to begin with that these are the last two defendants in this case that are before the court. There's no other cases that are pending in this case subject to other arrests out of Mexico. The other thing I'd... I don't know why the government doesn't want to admit that they felt a little sorry for the co-defendant and therefore probably figured they have to offer you a deal in order to avoid another issue of appeal. And I can't speak to that. The government is correct in saying that Mr. Lacey had done that, the trial attorney, in other cases. I don't think it's shameful for them to take it. The last thing... But, you know, if you take your argument to its ultimate conclusion, it would have precluded the plea agreement post-trial. And your client could have accepted a good plea agreement. We can't flee. That's completely separate, right? It would be our position that it doesn't pre... We're not asking you to preclude those plea agreements. What we're asking... I don't know whether it was a due process violation by accepting the plea agreement. Because if you hadn't, then you don't... My argument in doing that shows the reason for severance and the government's actions that both preceded and followed the need for severance. Yeah. I'm out of time. Thank you. Thank you for coming in today. Thank you both for the arguments. Very good. We appreciate it. And the case just argued will be submitted for decision. And the Court will stand adjourned for the day. All rise.
judges: Trager, Hawkins, Thomas